UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NORTH CAROLINA

UNITED STATES OF AMERICA, Plaintiff,

vs.

JUSTIN WADE HERMANSON, Defendant.

DOCKET NO. 7:20-CR-167-4M

TRANSCRIPT OF DETENTION HEARING
BEFORE MAGISTRATE JUDGE ROBERT B. JONES, JR.
WEDNESDAY, FEBRUARY 10, 2021; 1:03 PM
WILMINGTON, NORTH CAROLINA

**FOR THE GOVERNMENT:**
United States Attorney's Office - EDNC
By: Barbara D. Kocher, AUSA
150 Fayetteville Street
Suite 2100
Raleigh, NC 27601

**FOR THE DEFENDANT:**
The Law Offices of W. H. Paramore, III, P.C.
By: Walter H. Paramore, III, Esq.
410 New Bridge Street
Suite 4
Jacksonville, NC 28540

Audio Operator: CLERK'S OFFICE PERSONNEL

eScribers, LLC
7227 N. 16th Street
Suite 207
Phoenix, AZ 85020
800-257-0885
www.escribers.net

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

eScribers
www.escribers.net | 800-257-0885

I N D E X

| WITNESSES: | DIRECT | CROSS | REDIRECT | RECROSS | VOIR DIRE |
|---|---|---|---|---|---|
| For the Defendant: | | | | | |
| Carleen Hermanson | 7 | | | | |

| RULINGS: | PAGE | LINE |
|---|---|---|
| Defendant released with third-party custodian | 14 | 19 |

escribers
www.escribers.net | 800-257-0885

P R O C E E D I N G S

THE CLERK: All rise. The Honorable Court is now back in session. Please be seated and come to order.

THE COURT: All right. Are the parties ready to get started?

MS. KOCHER: Thank you, Your Honor.

Your Honor, the government is satisfied that there are a set of conditions which would reasonably appear the -- I'm sorry -- which would reasonably assure the appearance of the defendant at future proceedings, as well as protect the community from any danger that this defendant might cause.

THE COURT: Have you shared those with Mr. Paramore?

MS. KOCHER: We are working through them now, Your Honor.

THE COURT: Okay. Has probation seen those? Have you seen them?

MS. FITZGERALD: They're working through it right now. I'll see them here in a second.

THE COURT: Okay. All right.

(Pause)

MS. KOCHER: If I may approach the probation officer?

THE COURT: Yes, ma'am.

Have you gotten a chance to review those?

MR. PARAMORE: Yes, sir, Judge. Judge, there's one modification with respect to what you're looking at on your

escribers
www.escribers.net | 800-257-0885

bench there. And there's one other condition that I know about. I want to ensure they're --

(Pause)

THE COURT: All right. I've got the proposed conditions in my hands.

What are defense thoughts about these?

MR. PARAMORE: Your Honor, I've reviewed those. Ms. Kocher was kind enough to discuss them with me. And I would just ask the Court to adopt those, if the Court pleases.

THE COURT: Did you read these with your client?

MR. PARAMORE: Yes, sir. Judge, we changed from what was initially in the pre-trial report to home detention with electronic surveillance with the RF surveillance. And he consents to that and the other conditions.

THE COURT: Are you agreeable to these?

MS. KOCHER: Excuse me, sir? I did read them.

THE COURT: You're agreeable to them?

MS. KOCHER: Yes, sir.

THE COURT: Okay. Tell me a little bit about this case, to the extent where the Court can find how these are reasonably assuring.

MS. KOCHER: Thank you, Your Honor. The case against Mr. Hermanson stems from an indictment which found, by probable cause, that he was a member of a conspiracy, the members of which were rooted in a white supremacy extremism



www.escribers.net | 800-257-0885

that had stated their ultimate goals on a neo-Nazi forum in 2016 and 2017. Mr. Hermanson was not involved at that time, but met one of the co-defendants, Liam Collins, while stationed at Camp Lejeune, in the Marines, in or about 2018.

Mr. Hermanson was brought into the circle, as it were, first as a friend of Mr. Collins, became a go-between for Mr. Collins and the person and codefendant, Paul Kryscuk, who was then in Idaho, in terms of the sale and provision of unserialized handguns -- 9-millimeter handguns, as well as homemade suppressors, both of which -- particularly the suppressor in any event, but the GLOCKs, when manufactured in one state and then transported to another without a proper license, are both in violation of the gun laws.

Mr. Hermanson, here, had his own transaction and had one of those unserialized handguns, as well as a suppressor. He was also in possession of a short-barrel rifle and a sawed-off shotgun, all of which were seized, as well as a number of firearms owned by his father, to which the government has no belief that those were wrongly held. I don't mean to imply anything illegal in that. More the opposite, that there did appear to be a family familiarity with firearms and those types of things.

I understand that the defendant's participation in this came at a time when he was particularly vulnerable, that currently, the government does not believe that he would have

www.escribers.net | 800-257-0885

ongoing conduct in the types of crimes alleged in the indictment. The suggested conditions take in consideration some of those conditions, some of the challenges that the defendant was facing through his involvement with this group. It would protect through home detention. For instance, he lives very close to Camp Lejeune, and it would take care of any ongoing concern of his approaching or being on or near Camp Lejeune. It would prevent travel to other states where there might be unindicted and unarrested coconspirators. And in general, I believe that that level of supervision is appropriate, and with which he would be reasonably assured of appearing and no danger to the community.

THE COURT: Okay. Mr. Paramore, you're proposing Carleen Hermanson as a third-party custodian; is that correct?

MR. PARAMORE: She's his mother. She's here.

Would you stand up, please, Ms. Hermanson?

THE COURT: Okay. Would you mind calling her to the stand and ask her --

MR. PARAMORE: Yes, I'll call her.

THE COURT: -- the typical questions to assure the Court that she can fulfill that role?

MR. PARAMORE: Okay. Would you approach the witness stand, please, Carleen? Would you stand there? I'll have you raise your hand.

THE CLERK: If you would, please place your left hand

escribers
www.escribers.net | 800-257-0885

on the Bible and raise your right hand.

DEFENDANT'S WITNESS, CARLEEN HERMANSON, SWORN

THE CLERK: Thank you. You can take a seat.

THE COURT: Go ahead.

MR. PARAMORE: Thank you, Your Honor.

DIRECT EXAMINATION

BY MR. PARAMORE:

Q. Would you state your name for the judge, please?

A. Carleen Hermanson.

Q. Ms. Hermanson, we're being recorded. Could you spell your last name for the Court, for the record?

A. H-E-R-M-A-N-S-O-N.

Q. Okay. Thank you.

Where do you physically live?

A. 103 Walnut Drive, Swansboro, North Carolina.

Q. Swansboro. And who do you live with?

A. My husband, Russ, and my daughter, Callie.

Q. Okay. And can you describe briefly for Judge Jones the residence that you live in? How many bedrooms, bathrooms, things of that nature.

A. Just a small ranch home, three bedrooms, two bathrooms in a small, you know, private community.

Q. Okay. And specifically there are no firearms in the home now; is that correct?

A. My husband's actually in the process of removing those.

www.escribers.net | 800-257-0885

He had a -- a hunting rifle, because he does bear hunt, but he's in the process of getting that stored safely out of the home.

Q. And do you know what status that is? Has it been done? Has it been removed from the home yet?

A. I believe he's actually working on that as we speak.

Q. Okay. Specifically, your daughter who stays at home is how old?

A. She'll be eighteen in April.

Q. Okay. And can you tell the Court your type of employment?

A. I'm a bookkeeper. I'm self-employed. I'm a bookkeeper. I work for about fifteen different clients in the area. I work from home, and I do go to specific clients -- some on a weekly basis, some on a monthly basis. But I'm fortunate enough to have flexibility. I have the keys to their office, so I can work hours that would coincide with my husband's hours. So if my husband comes home at 4:30, I can -- I can leave and, you know, go to an -- an off-site client while my husband's home. So we could always work our schedules to be sure that somebody's always home.

Q. And Ms. Hermanson, what does your husband do, briefly?

A. He works civil service on the air station. He's -- his job is -- he's an engineering technician. But he really -- he works for the ROIKE (ph.) office doing building inspections

eScribers
www.escribers.net | 800-257-0885

and things of that nature.

Q. And so what you were describing for Judge Jones was how, with your flexibility and schedule, and your husband, that you all would be able to have someone at home just about every moment; is that correct?

A. Yes, sir. My -- my husband -- my husband works at home. Like, it alternates right now, so one week, he'll work at home Tuesday, Thursday, and then the other week he'll work home Monday, Wednesday, Friday. So there is -- we are home quite a bit. And then, of course, I work at home a few days a week as well.

Q. And so your son, Justin, he has his own bedroom; is that correct?

A. He does.

Q. Do you understand your role as a third-party custodian?

A. Yes, sir.

Q. I've described that to you, where you're there, and if you find that your son is in violation of the conditions of release, that you're required to notify probation, who is supervising him. Do you understand that?

A. Yes, sir.

Q. Will you do that?

A. Yes.

Q. Okay. All right.

MR. PARAMORE: At this time, I have no further

eScribers
www.escribers.net | 800-257-0885

questions of Ms. Hermanson.

THE COURT: All right. Ms. Kocher?

MS. KOCHER: No questions, Your Honor.

THE COURT: Ms. Hermanson, you said your son has a bedroom in the home; is that correct?

THE WITNESS: Yes, sir.

THE COURT: And that's at 103 Walnut Drive in Swansboro?

THE WITNESS: Yes, sir.

THE COURT: Okay. So there are some proposed conditions of release of your son. And what I'd like to do is I'd like to read these conditions.

Mr. Hermanson, I want you to hear these as well.

But I'd like you to hear them and let me know if you see any issue with -- whether these are realistic conditions, whether it's realistic to expect that he would comply with these, or also I want to ensure that you don't see any problems with you being able to do your level best to ensure that he does follow these conditions. Do you understand what I'm asking you?

THE WITNESS: Yes.

THE COURT: Okay. So the conditions are what we refer to as the mandatory conditions. That is that your son must not violate any federal, state, or local law while he is on release, that he provide a DNA sample, if that is

www.escribers.net | 800-257-0885

authorized, that he advise the court or the pre-trial services office or supervising officer in writing before making any change of residence or telephone number. He must also appear in court as required. If he's convicted, he must surrender as he is directed to serve any sentence that may be imposed upon him.

He would be placed in your supervision at 103 Walnut Drive in Swansboro. He must submit to supervision by the pre-trial office. He continue or actively seek employment. He not obtain a passport or other international travel document, that he remain in the Eastern District of North Carolina. And he should be provided a map of that district. Roughly, it's the forty-four easternmost counties of our state, from the Virginia line to the South Carolina line. It includes places like Wilmington, Jacksonville, Raleigh, Greenville, New Bern, Elizabeth City. It does not include places like Virginia, South Carolina, Durham, Charlotte, Winston-Salem, Asheville. Additionally, that Mr. Hermanson is to avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution. This includes all co-defendants, as well as someone named Maxwell Womack, Joseph Maurino, and Joseph -- it begins with a Z.

MS. KOCHER: It's pronounced [Za-ha-rick].

THE COURT: Zacharek, and someone named Two --

MS. KOCHER: Just the middle -- the first initial is

eScribers
www.escribers.net | 800-257-0885

T.

THE COURT: -- T. Collins (ph.).

MS. KOCHER: That's correct.

THE COURT: Next, he shall not possess a firearm, a destructive device, or other weapon. He may not use alcohol at all. He submit -- well, I'm going to add the that he not use or unlawfully possess a narcotic drug or other controlled substance, unless prescribed by a licensed medical practitioner, and that he submit to testing to ensure that he's complying with this condition; that he participate in a program of inpatient or outpatient substance abuse therapy and counseling, if directed by the probation office; that he participate in home detention, whereby he is restricted to his residence at all times, except for employment, education, religious services, medical, substance abuse, or mental health treatment, attorney visits, court appearances, court-ordered obligation, or other activities approved in advance by the probation office or supervising officer; that he submit to electronic monitoring; that he report, as soon as possible, every contact with law enforcement personnel, including arrests, including questioning, and including traffic stops; and that he also submit to warrantless searches of his person, of his residence, of his property, or his vehicle to ensure that he's complying with the conditions of this order.

Do you see any problem with him either complying with

eScribers
www.escribers.net | 800-257-0885

these conditions or your ability to ensure that he does?

THE WITNESS: I do not.

THE COURT: Okay. All right.

I've got no further questions for her.

MR. PARAMORE: You may stand down.

THE COURT: You can step down. Thank you.

Now, Mr. Hermanson, did you hear these conditions?

THE DEFENDANT: Yes, Your Honor, I did.

THE COURT: And do you understand these conditions?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And do you assure the Court that you will follow these conditions while out on release in this case?

THE DEFENDANT: Yes, sir, I do.

THE COURT: All right. Anything further from either party?

MR. PARAMORE: No, Your Honor.

MS. KOCHER: Not for the government, Your Honor.

THE COURT: Okay. I'd like Mr. Hermanson to review these conditions with his attorney and tell me, in writing, what he just told me orally as well.

Ms. Carleen Hermanson will need to sign, signifying her commitment as a third-party custodian. And we need the front page of that police report.

MS. FITZGERALD: Your Honor?

THE COURT: Yes, ma'am.


www.escribers.net | 800-257-0885

MS. FITZGERALD: Could they hook the RF up tomorrow, given the time it is, and by the time he's processed out --

THE COURT: Where is he? New Hanover?

MS. FITZGERALD: He -- you're in --

MR. PARAMORE: That's correct. New Hanover County Jail, Your Honor.

MS. FITZGERALD: Right. But he's going to Onslow.

THE COURT: Any problem with him being released today and probation going by there tomorrow to install the electronic monitoring?

MS. KOCHER: No, Your Honor.

THE COURT: All right.

MS. KOCHER: That would suffice.

THE COURT: That's fine.

MS. FITZGERALD: Thank you.

THE COURT: So just to be clear, the order will be effective once it's signed, save for the electronic monitoring, which will be effective once it's properly installed at the residence tomorrow.

MS. FITZGERALD: The officer said he might be able to get there this evening, depending on what time.

THE COURT: Whenever it's installed.

MS. FITZGERALD: Okay.

MR. PARAMORE: Your Honor, may I approach? I may have some comments.

escribers
www.escribers.net | 800-257-0885

THE COURT: All right.

(Pause)

THE COURT: All right. Is there anything further regarding Mr. Hermanson's case?

MR. PARAMORE: No, Your Honor.

MS. KOCHER: No, sir.

THE COURT: All right. Thank you very much.

MS. KOCHER: Thank you, sir.

MR. PARAMORE: Thank you, Your Honor. I'll see you tomorrow.

THE CLERK: All rise. The Honorable Court is now adjourned.

(Court is adjourned)

* * * * *

eScribers
www.escribers.net | 800-257-0885

CERTIFICATE OF TRANSCRIBER

I, Sara Bernstein, court-approved transcriber, in and for the United States District Court for the Eastern District of North Carolina, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript from the official electronic sound recording of the proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this 5th day of February, 2024.

/s/ Sara Bernstein

SARA BERNSTEIN, CDLT-127

COURT-APPROVED TRANSCRIBER

www.escribers.net | 800-257-0885